IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00028-PAB-KLM
(*consolidated with Civil Action No. 12-cv-00377-PAB*)

DARREN GIUFFRE, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

MARYS LAKE LODGE, LLC, a Colorado Limited Liability Company, and
RAMS HORN DEVELOPMENT COMPANY, LLC, doing business as
Marys Lake Lodge, a Colorado Limited Liability Company,

    Defendants.

---

**ORDER**

---

Plaintiff is a former server in a restaurant operated by defendant Marys Lake Lodge, LLC ("MLL") in Estes Park, Colorado. While working for MLL, plaintiff was required to share a portion of his tips with the person, often a manager, filling the position of "expeditor." Plaintiff alleges that this requirement violated federal and state wage laws and constituted a breach of contract. Moreover, plaintiff contends that MLL failed to provide him with notice that it intended to take a "tip credit," i.e., pay him less than minimum wage in light of the receipt of tips.

The matter comes before the Court on MLL's motion for summary judgment [Docket No. 64]. The motion is fully briefed and ripe for disposition.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## II. DISCUSSION

The Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. § 201 *et seq.*, permits an employer to pay a wage less than the federal minimum wage to "tipped employees" under certain circumstances. *See* 29 U.S.C. § 203(m).[1] To take this so-called "tip credit" against the minimum wage, the employee must be "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Furthermore, the employee must have "been informed by the employer of the

---

[1]Plaintiff also asserts claims pursuant to parallel provisions arising under Colorado law. *See, e.g.*, Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq.*; Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq.*

provisions of this subsection."  29 U.S.C. § 203(m); *see Koellhoffer v. Plotke-Giordani*, --- F. Supp. 2d ----, 2012 WL 846670, at *8 (D. Colo. March 12, 2012) ("To be eligible for the tip credit, the employer must first notify the employees of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit."). Finally, an employer may require an employee to "pool" or share tips with other "employees" so long as those employees "customarily and regularly receive tips."  29 U.S.C. § 203(m).  Plaintiff contends that he  (1) was required to share tips with employees who did not "customarily and regularly receive tips" as well as with his "employer" and (2) was not notified of MLL's intention to take the tip credit.

### A.  Tip Sharing

MLL utilized the expeditor position on busy nights to assist in its restaurant. Defendants contend that the expeditor is a "front of the house" position that falls within the definition of a "tipped employee" for purposes of the FLSA, thus barring plaintiff's claim that the tip credit is invalidated by the sharing requirement.  *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011) ("Customarily, front-of-the-house staff like servers and bartenders receive tips.  Back-of-the-house staff like cooks and dishwashers do not, and thus cannot participate in a mandatory tip pool.").  In arguing about whether the expeditor could share in tips, the parties focus on the position's level of interaction with customers.  *See id.* ("Direct customer interaction is relevant because it is one of the factors distinguishing these two categories of workers."); *see Townsend v. BG-Meridian, Inc.*, 2005 WL 2978899, at *6 (W.D. Okla. Nov. 7, 2005) ("The cases that have considered whether a given occupation falls within

the definition of a tipped employee have focused on the level of customer interaction involved in that occupation.").

Plaintiff admits that, during the time he worked at MLL, the expeditor position was usually filled by Mikilynn Wollett. *See* Docket No. 64 at 3, ¶ 8; Docket No. 92 at 3, ¶ 8. Ms. Wollett descibes the expeditor as a "front of the house" position with the following responsibilities: "checking the plates as they come out from the kitchen cooks to make sure they match the tickets; placing the food on the serving trays; taking the serving trays to the tables and delivering the food to customers; checking in with customers about their meals and exchanging food if the customer has [a] complaint; refilling beverages; chatting with customers; and assisting the wait staff in any other way necessary." Docket No. 64 -1 at 2, ¶¶ 1-2. According to Ms. Wollett, the "position is very similar to that of a waiter, and the attire is nearly identical, but the expeditor/food runner does not take the customers' orders." *Id.* at 1, ¶ 2.

Plaintiff does not dispute that, if this is an accurate description of the expeditor position, he would not be able to proceed with his claim based on impermissible tip sharing. In response to MLL's motion, however, plaintiff describes the position's responsibilities differently than Ms. Wollett. He declares that he worked "numerous times" with individuals working as the expeditor and, "at various times, . . . was asked to serve as the expeditor." Docket No. 92-1 at 3, ¶ 4. From that experience, plaintiff avers that the "expeditor would stand in the kitchen, separated from customers, and check food quality on plates, make sure the order matched the ticket and place food on trays." *Id.* at 3, ¶ 6; *see id*. at 3-4, ¶ 6 ("In effect, the expeditor was in charge of quality control over food before it was picked up by servers and delivered to customers."). According

4

to plaintiff, the expeditor also "served as a liason [sic] between the servers and the other kitchen staff," but had no responsibility for delivering food to tables or interacting with customers. *Id.* at 4, ¶ 6. In light of this "back of the house" role, plaintiff contends that the expeditor was not required to wear the server uniform. *See id.* at 4, ¶ 7.

In reply, MLL supplied the affidavit of Elizanne Smit-Inman who served as plaintiff's "direct supervisor every time he was employed as a server in MLL's restaurant." Docket No. 94-1 at 2, ¶ 1. Ms. Smit-Inman was responsible for scheduling "front of the house" employees and would include the expeditor in such schedules. She states that the expeditor position "was only ever filled by front of the house employees, and typically on a rotating basis." *See* Docket No. 94-1 at 3, ¶ 4; *see also* Docket No. 94-3 ("front of the house" staffing schedules). Ms. Smit-Inman describes the position as having the same responsibilities described by Ms. Wollett. *See id.* at 4, ¶ 6. She further avers that the expeditor "never stood in the kitchen" and, like other servers, was "not allowed 'behind the line' where the kitchen staff cooked." *Id.* ("When the expeditor/food runner was not delivering food to tables, the expeditor/food runner stood in the Wait Station where all servers went to pick up their dishes to bring to customers."). MLL also supplied the affidavit of Marc Grandmaison, who states that he "created the expeditor/food runner position at [MLL] in 2005." Docket No. 94-2 at 3, ¶ 2. He contends that the expeditor/food runner position has always been "front of the house," to assist wait staff in getting food to customers faster. *See id.* at 3, ¶¶ 3, 4. Furthermore, MLL points out that the record includes server schedules indicating that the expeditor/food runner position "was only filled by front of the house employees."

Docket No. 94 at 7.  See Docket No. 94-3; see also Docket No. 94-4 (separate schedule for "culinary staff").

After MLL submitted this additional evidence, plaintiff filed a surreply to which he attached a "Supplemental Declaration."  Docket No. 143-1.  In this declaration, plaintiff qualifies his description of the expeditor position by stating that he does "not recall ever seeing an expeditor deliver food to customers, check in with customers or otherwise deal with customers."  Id. at 3, ¶ 6 ("If it ever happened, it was an anomaly.").  In regard to the position's role vis a vis waitstaff, he asserts somewhat vaguely that, after arranging food on trays and checking the food quality, expeditors "then arranged for servers to deliver the food to tables."  Id.

The Court finds, based on the foregoing, that plaintiff has failed to identify a genuine dispute of material fact.  Plaintiff relies exclusively on his own uncorroborated declarations, the latter of which qualifies his descriptions of the expeditor position. Plaintiff's declarations are insufficient to survive summary judgment.  See also Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (non-movant is not permitted to "rely[] on the allegations in his [or her] pleadings, conclusory statements, or on 'mere assertions that affidavits supporting the motion are not credible'") (internal citations omitted).  Although a non-movant's testimony based on personal knowledge need not necessarily be corroborated to raise a genuine dispute of fact, see Berry v. Chicago Transit Authority, 618 F.3d 688, 691 (7th Cir. 2010),[2] the Court finds that plaintiff's

---

[2] See also Sirovatka v. Budget Control Services, Inc., No. 10-cv-03028-PAB-CBS, 2012 WL 602658, at *3 (D. Colo. Feb. 24, 2012) (where this Court stated that defendant failed to "persuasively explain why, in light of the nature of this particular factual issue, the testimony of plaintiff regarding the substance of a two-person

evolving and increasingly vague description of the position does not constitute anything more than a mere "scintilla of evidence," which "is insufficient to create a dispute of fact that is 'genuine.'" *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

Plaintiff, who seeks to represent a class of similarly situated MLL employees, *see* Docket No. 43, submits no corroborating evidence describing the expeditor in the manner that he does. *See Roberts v. Fairfax County Public Schools*, --- F. Supp. 2d ----, 2012 WL 380130, at *5 (E.D. Va. Feb. 6, 2012) (finding plaintiff's contentions constituted a "mere . . . scintilla" of evidence where, "[d]espite [his] deposition testimony that there were witnesses to [the] conduct, the Plaintiff has not put forth a single verified statement from any witness who supports [plaintiff's] recollection" and, "[i]ndeed, every declaration . . . support[ed] [defendant]") (citing, *inter alia*, *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (to avoid summary judgment, the nonmoving party "must offer some hard evidence that its version of the events in question is not wholly fanciful").[3] "Undoubtedly, credibility determinations are within the province of the jury and it is not the role of the Court 'to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose [her], or to disregard stories that are hard to believe.' Nonetheless, it remains the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Id.* at *5 n.3 (citations omitted). Here, the lack of a genuine issue of material fact regarding whether

---

conversation in which he participated is insufficient" to survive summary judgment).

[3]Plaintiff filed his surreply on August 20, 2012, more than eight months after the close of discovery. He has had every opportunity to submit evidence that might support his claim.

7

the expeditor is a "front of the house" position entitles MLL to summary judgment on plaintiff's claims based on allegations of impermissible tip sharing.[4]

As noted above, plaintiff has filed a motion seeking class certification of his state law claims [Docket No. 43]. Plaintiff contends that the "commonality" requirement of class certification is met because the "'common nucleus' presented . . . is whether [MLL] improperly diverted tips to its expeditor." Docket No. 43 at 9. Because MLL is entitled to summary judgment on plaintiff's claims relating to sharing tips with the expeditor position, the Court will deny plaintiff's motion for class certification as moot

Plaintiff also contends that Ms. Wollett was a manager and thus not permitted to take part in the tip sharing arrangement regardless of her position in the restaurant. Pursuant to the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer *in relation to an employee*." 29 U.S.C. § 203(d) (emphasis added). While plaintiff points out that Ms. Wollett acted as the head of MLL's housekeeping department during the day, he identifies no evidence that Ms. Wollett exercised any managerial duties in relation to him. Applying the "economic reality test" for determining whether somebody is an "employer," the Court identifies no evidence

---

[4]The Court notes that interaction with customers is not necessarily the *sine qua non* of the analysis. Although plaintiff contends that the expeditor assisted kitchen staff, he provides no evidence that the tasks he identifies would not otherwise be done by servers. *Cf. Turner v. Millennium Park Joint Venture*, LLC, 767 F. Supp. 2d 951, 954-55 (N.D. Ill. 2011) ("So in real world terms it is readily understandable that employees receiving tips directly from customers may agree to share tips when they believe that the employees with whom they share help them to serve the customers better and more fully and thus to obtain additional tips and sweeten the pot for everyone. Just so with a silverware roller, who performs work that would otherwise be a waitperson function.").

supporting plaintiff's claim that he was required to share tips with his "employer."[5] The Court therefore will grant MLL summary judgment on this ground as well.

### B. Notice of the Tip Credit

As noted above, MLL could only take a tip credit toward plaintiff's minimum wage if it had informed plaintiff "of the requirements of the law regarding minimum wages and of the employer's intention to take the tip credit." *Koellhoffer*, 2012 WL 846670, at *8. While plaintiff admits that the MLL tip sharing policy was discussed with him when he began working for MLL, *see* Docket No. 92 at 4, ¶ 23, he denies being told by his supervisors that MLL would take a tip credit.[6] The undisputed record evidence indicates, however, that he was informed of the tip credit.

MLL contends that, since 2007, it has displayed posters at the Wait Station of

---

[5]"The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)). Plaintiff does not supply any evidence that Ms. Wollett had any of these powers in relation to him or others at MLL's restaurant. Rather, he relies on speculation that, if he was disrespectful of her, Ms. Wollett could exert influence on persons holding managerial positions over plaintiff to have him disciplined. *See* Docket No. 143-1 at 3, ¶ 5. And while he originally declared that she sat on an "Executive Committee," he appears to have abandoned that contention after MLL submitted second affidavit of Vicki Parrish, who avers that MLL has not had an Executive Committee at any of the relevant times. *See* Docket No. 94-5 at 3, ¶ 3.

[6]MLL has supplied evidence indicating that, "[b]efore a server begins work, a [MLL] restaurant manager describes the tip sharing policy to them, and the managers and servers typically have other discussions regarding the policy throughout the course of the server's employment." Docket No. 64-3 at 3, ¶ 9. She further avers that the "tipping policy was explained to [plaintiff] when he began work in the [MLL] restaurant." Docket No. 64-3 at 3, ¶ 10; *see* Docket No. 94-1 (Smit-Inman Aff.) at 3, ¶ 2. Plaintiff's declarations raise a dispute regarding whether a manager ever discussed the tip credit with him.

the restaurant issued by the Colorado Department of Labor and Employment indicating the applicable minimum wage, Docket No. 94 at 2, including that for "tipped employees" subject to a tip credit. *See* Docket No. 94–7 at 1 (indicating a minimum wage of $4.00 effective January 1, 2008 for "tipped employee" subject to tip credit);[7] *see also* Docket No. 94-1 (Smit-Inman Aff.) at 3, ¶ 3 ("I personally post a copy of the Colorado Minimum Wage Order Poster for the relevant year in the Main Office and at the Wait Station in the restaurant every year since 2007."). Although plaintiff contends that he was not specifically told that he would be paid a lower hourly wage than the applicable minimum wage in light of his receipt of tips, the poster outlines the minimum wage for tipped employees. Plaintiff does not dispute that this poster was displayed at the Wait Station nor does he contend that he never read it.[8] *See Koellhoffer*, 2012 WL 846670, at *8 (finding notice sufficient in part because plaintiff did "not dispute the fact that Defendants complied with the requirement of the State of Colorado of posting of certain information in the form of 'Minimum Wage Order Posters', and that these posters at the workplace contained the information about the tip credit."); *see also Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 719 (N.D. Ind. 1998) ("[A]n employer may meet the notice requirement simply by providing conforming written materials to its employees. This holding is supported by dicta from other decisions indicating that an employer can satisfactorily convey notice of the tip credit by way of a poster, if the content of the

---

[7]Plaintiff contends that he never saw the portion of a personnel form cited that indicates his hourly wage as of August 16, 2008 was "$4.00 + tips," but he does not contend that MLL failed to otherwise inform him of his hourly rate.

[8]Plaintiff does dispute that MLL's internal tip sharing policy, *see* Docket No. 94-6 at 3, was posted at the time of his employment. *See* Docket No. 92 at 4, ¶ 23.

poster is otherwise sufficient and it is prominently displayed."). Plaintiff avoids the question of whether, via the poster, MLL supplied him with adequate information regarding the tip credit. However, his failure to dispute the facts regarding the display of the poster do not allow him to survive summary judgment. *Cf. Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) ("As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily 'explain' the tip credit as argued by the plaintiffs. The statute requires that the employee be 'informed' of the tip credit.").

### C. Remaining Claims

After the present motion for summary judgment was filed, plaintiff filed an amended complaint asserting an FLSA claim based on an alleged failure of MLL to pay him overtime and reasserted a breach of contract claim. These claims are the subject of MLL's since-filed motion to dismiss plaintiff's amended complaint [Docket No. 121], which the Court will address in due course.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that MLL's motion for summary judgment [Docket No. 64] is GRANTED. It is further

**ORDERED** that MLL is entitled to summary judgment on plaintiff's claims relating to the tip sharing requirements and notice of the tip credit. Plaintiff's overtime and breach of contract claims survive. It is further

**ORDERED** that plaintiff's motion for class certification of his state law claims [Docket No. 43] is DENIED as moot.

DATED September 28, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge